IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-530

Filed 18 February 2026

Wake County, No. 23E004747-910

MARY PAULA ZAYTOUN STEELE, Petitioner,

v.

KEVIN I. KENNA, JEFFREY A. KENNA, PATRICK E. KENNA, PETER L. KENNA, THOMAS X. KENNA, MARTHA ZAYTOUN, CLARE K. ZAYTOUN, TAYLOR M. ZAYTOUN, REEVES M. ZAYTOUN, MARY L. ZAYTOUN BERNE, HENRY S. ZAYTOUN, III, JEREMIAH R. ZAYTOUN, CHRISTIAN S. ZAYTOUN, HAYNES ZAYTOUN, BLAISE WATERS, BECKET WATERS, ALEXANDRA PENNY, ELENA PENNY, MARK FOSTER, JR., MARTHA LEE BRISSETTE, AUGUSTUS HOWARD, CHARLES N. HOWARD, KATIE ALLARE, GREGORY ALLARE, JOHN MICKELSON, ASHLEY STEELE, DANNY STEELE, BRIGID STEELE, and HENRY S. ZAYTOUN, JR., as guardian for MARGARET A. ZAYTOUN, and RACHEL L. ZAYTOUN, Respondents.

Appeal by petitioner from order entered 22 November 2024 by Judge Matthew T. Houston in Wake County Superior Court. Heard in the Court of Appeals 19 November 2025.

> *The Armstrong Law Firm, P.A., by L. Lamar Armstrong, III, and Daughtry, Woodard, Lawrence & Starling, LLP, by Luther D. Starling, Jr., and Alexander M. Guin, for petitioner-appellant/counter-respondent.*
>
> *Shumaker Loop & Kendrick, LLP, by Lynn F. Chandler and Lucas D. Garber, for respondents-appellees/counter-petitioners Katie Allare, Gregory Allare, John Mickelson, Ashley Steele, Danny Steele, and Brigid Steele.*
>
> *No brief filed on behalf of respondents-appellees Kevin I. Kenna, Jeffrey A. Kenna, Patrick E. Kenna, Peter L. Kenna, Thomas X. Kenna, Martha Zaytoun, Clare K. Zaytoun, Taylor M. Zaytoun, Reeves M. Zaytoun, Mary L. Zaytoun Berne, Henry S. Zaytoun, III, Jeremiah R. Zaytoun, Christian S. Zaytoun, Haynes Zaytoun, Blaise Waters, Becket Waters, Alexandra Penny, Elena Penny, Mark Foster, Jr., Martha Lee Brissette, Augustus Howard, Charles N. Howard,*

*and Henry S. Zaytoun, Jr., as guardian for Margaret A. Zaytoun and Rachel L. Zaytoun.*

ZACHARY, Judge.

Petitioner Mary Paula Zaytoun Steele, the widow of Patrick Steele, acting in her capacity as trustee of the Patrick Steele Revocable Trust, appeals from an order granting the motion to compel filed by Counter-Petitioners Katie Allare, Gregory Allare, John Mickelson, Ashley Steele, Danny Steele, and Brigid Steele, who are the biological nieces and nephews and sister, respectively, of Patrick Steele (collectively, "Counter-Petitioners"). After careful review, we affirm the order compelling the production of documents by the law firm of Wyrick Robbins Yates & Ponton LLP ("Wyrick Robbins").

## I. **Background**

This case arises from a dispute over who shall be included in the class described as "my nieces and nephews" and thereby entitled to a share of a $5 million distribution from the Patrick Steele Revocable Trust.

The Trust was first created in 2007 and was modified several times prior to the death of Patrick Steele ("Grantor") in 2022. In the 2007 iteration of the Trust, Grantor named as potential extended-family beneficiaries "Brigid Ann Steele; my nieces and nephews; and my wife's nieces and nephews." In 2013, Grantor amended the trust agreement, changing the potential extended-family beneficiaries to "such of Brigid

Ann Steele, my nieces and my nephews as survive me." In successive amendments in 2015, 2018, and 2021, Grantor retained his sister and his nieces and nephews as potential extended-family beneficiaries. In the 2018 amendment, Grantor limited the amount that would be distributed to his sister and his nieces and nephews to no more than $5,000,000.

Attorney Matt Bullard of Wyrick Robbins drafted the 2007 Trust with the assistance of John O'Connor, an Iowa attorney with whom Grantor had previously worked. Bullard drafted the 2013 Amendment and O'Connor drafted the 2018 Amendment, although Counter-Petitioners assert that Bullard "played a significant role in drafting" it as well. Bullard drafted the 2021 Amendment.[1]

On 1 September 2023, Mary Paula Zaytoun Steele, acting in her capacity as trustee of the Trust, filed a petition for declaratory judgment seeking clarification of the "rights and obligations created under the Trust and construction of the phrase 'nieces and nephews' as used in the Trust." Specifically, she seeks a declaratory judgment that Grantor's five biological nieces and nephews and twenty-four marital nieces and nephews comprise the class of "my nieces and nephews" and are therefore entitled to distributions as extended-family beneficiaries of the Trust.

On 27 February 2024, Grantor's marital nieces and nephews filed an answer and motion for summary judgment consonant with the petition, asserting that the

---

[1] It is unclear from the record which attorney drafted the 2015 Amendment, although it was executed in Wake County, North Carolina.

class of "my nieces and nephews" includes both Grantor's biological and marital nieces and nephews. On 26 November 2024, Counter-Petitioners filed an amended answer, affirmative defenses, and amended counter-petition[2] in which they alleged, *inter alia*, that during a meeting with his Iowa attorney, Grantor had "clearly expressed his intent to leave the Nieces and Nephews Portion to his side of the family only." Counter-Petitioners seek a declaratory judgment that they are the only beneficiaries of the extended-family portion of the Trust, to the exclusion of the marital nieces and nephews.

During discovery, Counter-Petitioners served Wyrick Robbins with a subpoena directing the firm to produce "[a]ll documents related to estate planning for [Grantor]." Wyrick Robbins objected to the subpoena on the basis of attorney-client privilege and refused to produce the requested discovery absent Mary Paula Zaytoun Steele's written consent or a court order compelling its production. On 6 September 2024, Counter-Petitioners filed a motion to compel, seeking an order "compelling Wyrick Robbins to produce and permit inspection and copying of all documents related to the estate planning for" Grantor. In support of their motion, Counter-Petitioners invoked the "testamentary exception to the attorney-client privilege."

On 22 November 2024, the trial court entered an order addressing, *inter alia*,

---

[2] The original answer and counter-petition do not appear in the record. The parties stipulated that "[a]s the amended pleadings are now the operative pleadings, they are included in the Record and the originals are excluded from the Record."

Counter-Petitioners' motion to compel. The court granted Counter-Petitioners' motion and instructed Wyrick Robbins to produce the subpoenaed documents within 14 days of service of the order.

Mary Paula Zaytoun Steele timely filed notice of appeal from the court's order, "specifically the portion of the [o]rder granting [the] [m]otion to [c]ompel."

## II.    Appellate Jurisdiction

"Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). Such orders are appealable, however, "when the challenged order affects a substantial right of the appellant that would be lost without immediate review." *Campbell v. Campbell*, 237 N.C. App. 1, 3, 764 S.E.2d 630, 632 (2014) (citation omitted).

"An order compelling discovery is interlocutory in nature and is usually not immediately appealable because such orders generally do not affect a substantial right." *Sessions v. Sloane*, 248 N.C. App. 370, 380, 789 S.E.2d 844, 853 (2016). Yet when "a party asserts a statutory privilege which directly relates to the matter to be disclosed under an interlocutory discovery order, and the assertion of such privilege is not otherwise frivolous or insubstantial, the challenged order affects a substantial

right." *Sharpe v. Worland,* 351 N.C. 159, 166, 522 S.E.2d 577, 581 (1999); *see also State v. Chemuti*, 388 N.C. 412, 417, 920 S.E.2d 810, 815 (2025) ("We have long held that orders compelling the disclosure of information allegedly subject to a statutory confidentiality protection are immediately appealable as affecting a substantial right."). For similar reasons, and although the protection arises from the common law rather than by statute, this Court has also "applied the reasoning of *Sharpe* to the common law attorney-client privilege." *K2 Asia Ventures v. Trota*, 215 N.C. App. 443, 446, 717 S.E.2d 1, 4, *disc. review denied*, 365 N.C. 369, 719 S.E.2d 37 (2011).

In the case at bar, Mary Paula Zaytoun Steele argues that the trial court erred by ordering Wyrick Robbins to produce documents related to Grantor's estate planning. As the record reveals, Mary Paula Zaytoun Steele objected to the production of the documents, asserting attorney-client privilege on behalf of herself and Grantor. Thus, the court's order granting Counter-Petitioners' motion to compel is immediately appealable.

### III. <u>Discussion</u>

Mary Paula Zaytoun Steele raises two issues on appeal: whether the trial court erred (1) "by applying the 'testamentary exception' to . . . Grantor's attorney-client privilege"; and (2) "by failing to uphold and protect [Mary Paula Zaytoun Steele]'s personal attorney-client privilege."

**A. <u>Standard of Review</u>**

Whether a "party's motion to compel discovery should be granted or denied is

within the trial court's sound discretion and will not be reversed absent an abuse of discretion." *Maldjian v. Bloomquist*, 245 N.C. App. 222, 226, 782 S.E.2d 80, 83 (2016) (citation omitted). A trial court abuses its discretion when its "actions are manifestly unsupported by reason and so arbitrary that they could not have been the result of a reasoned decision." *Id.* at 226, 782 S.E.2d at 83–84 (cleaned up). By contrast, "the determination of privilege is a question of law." *Medlin v. N.C. Specialty Hosp., LLC*, 233 N.C. App. 327, 339, 756 S.E.2d 812, 820 (2014). "Questions of law receive de novo review." *In re Appeal of Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (italics omitted).

## B. <u>Grantor's Attorney-Client Privilege</u>

As our Supreme Court has explained, "[t]he attorney-client privilege is one of the oldest recognized privileges for confidential communications. The privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Dickson v. Rucho*, 366 N.C. 332, 340, 737 S.E.2d 362, 368 (2013) (citation omitted). "When the relationship of attorney and client exists, all confidential communications made by the client to his attorney on the faith of such relationship are privileged and may not be disclosed." *In re Investigation of Death of Miller*, 357 N.C. 316, 328, 584 S.E.2d 772, 782 (2003) (cleaned up). Moreover, "the attorney-client privilege . . . survive[s] the death of the client." *Id.* at 323, 584 S.E.2d at 779.

Yet, the attorney-client privilege is not absolute. Indeed, the United States Supreme Court has long recognized certain exceptions to the privilege, including the "testamentary exception" at issue in the instant case: "[W]e are of opinion that, in a suit between devisees under a will[,] statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged." *Glover v. Patten*, 165 U.S. 394, 406, 41 L. Ed. 760, 767 (1897). Our Supreme Court has also adopted the testamentary exception, explaining that "where the controversy is to determine who shall take by succession the property of a deceased person and both parties claim under him, neither can set up a claim of privilege against the other as regards the communications of [the] deceased with his attorney." *In re Will of Kemp*, 236 N.C. 680, 684, 73 S.E.2d 906, 910 (1953) (citation omitted). The exception is grounded in the assumption that "a client impliedly authorized the release of confidential information in order that the estate might be properly and thoroughly administered." *In re Will of Johnston*, 157 N.C. App. 258, 263, 266, 578 S.E.2d 635, 640, 641 (Tyson, J. dissenting) (cleaned up) (addressing merits where majority dismissed as interlocutory and concluding trial court erred in denying motion to compel because testamentary exception applied), *aff'd on other grounds*, 357 N.C. 569, 597 S.E.2d 670 (2003).

The parties cite no North Carolina cases—and our research yields none—that have applied the testamentary exception to the attorney-client privilege in the context of a trust, rather than a will. We conclude that the logic of the exception's

application to wills applies with equal force to trusts. The exception applies when there is a "controversy . . . to determine who shall take by succession." *Kemp*, 236 N.C. at 684, 73 S.E.2d at 910 (citation omitted). This is the precise controversy presented by the present case. Here, the parties dispute Grantor's intent in his use of the phrase "my nieces and nephews," which in turn controls the distribution of a substantial amount of money from Grantor's Trust to the extended-family beneficiaries. Further, although not controlling precedent, we observe that a number of our sister States have applied the exception to trusts. *See, e.g., Zook v. Pesce*, 91 A.3d 1114, 1120 (Md. 2014) ("[W]e reaffirm that in a dispute between putative heirs or devisees under a will or trust, the attorney-client privilege does not bar admission of testimony . . . regarding communication between the decedent and . . . attorneys."). Considering this issue of first impression under North Carolina law, we now similarly conclude that the testamentary exception to the attorney-client privilege applies equally to a dispute regarding distribution under either a will or a trust.

There is no contention that the exception does not apply to trusts in general. Instead, Mary Paula Zaytoun Steele disputes the trial court's application of the testamentary privilege to *Grantor's* Trust, arguing that:

> The Zaytoun Respondents and Steele Respondents do not "set up a claim of privilege" against the other. [Mary Paula Zaytoun Steele] and . . . Grantor (through [Mary Paula Zaytoun Steele]) assert their own privileges. No third party asserts the privilege of another.
>
> . . . .

> The client (. . . [Mary Paula Zaytoun Steele], for herself and Grantor) has not chosen to waive the privilege. The client, not a third party, invokes the privilege. The testamentary exception therefore does not apply to . . . [Mary Paula Zaytoun Steele]'s assertion of the privilege.
>
> Our courts have never applied the testamentary exception to deprive a client of her own privilege.

The underlying purpose of the testamentary exception defeats Mary Paula Zaytoun Steele's argument. Our Supreme Court "recognizes a five-part test to determine whether [attorney-client] privilege applies to a certain communication"; the privilege applies if, *inter alia*, "the client has not waived the privilege." *Sessions*, 248 N.C. App. at 385–86, 789 S.E.2d at 856 (citation omitted). When applying the testamentary exception, we assume that the client "impliedly authorized the release of confidential information in order that the estate might be properly and thoroughly administered," thereby waiving the privilege. *Johnston*, 157 N.C. App. at 266, 578 S.E.2d at 641 (Tyson, J. dissenting) (cleaned up).

The instant case presents the quintessential situation that the testamentary exception exists to resolve. Because the issue presented is Grantor's intent in his use of the phrase "my nieces and nephews"—affecting the distribution of his property—the law assumes that Grantor "impliedly authorized the release of" his communications with, and documents prepared by, Wyrick Robbins, "in order that [his] estate might be properly and thoroughly administered." *Id.* (citation omitted).

Mary Paula Zaytoun Steele also argues that the testamentary exception

applies only to the drafter of the document. She contends that O'Connor drafted the 2018 Amendment, not Bullard; however, Counter-Petitioners contend that Bullard also "played a significant role" in drafting this amendment. Therefore, both attorneys could have documents including privileged communications related to Grantor's estate planning in their possession. The trial court thus properly determined that these communications are subject to discovery in the instant action.

Accordingly, the trial court did not abuse its discretion in compelling the production of "the documents in [Wyrick Robbins's] custody, control, or possession that are responsive to the [s]ubpoena."

## C. <u>Mary Paula Zaytoun Steele's Attorney-Client Privilege</u>

Finally, Mary Paula Zaytoun Steele argues that the privileged communications that she and Grantor had with Wyrick Robbins "are inextricable," making it "impossible for Wyrick Robbins to adhere to the Order by producing and withholding the same information." She further argues that "[a]t minimum, the trial court failed to conduct an appropriate *in camera* review to determine what, if any, portion of the subpoenaed files can be produced without violating [her] privilege."

Our review of the record and transcripts reveals no argument before the trial court that Mary Paula Zaytoun Steele's personal attorney-client privilege was inextricably linked with Grantor's, other than a bare assertion that Mary Paula Zaytoun Steele and Grantor "consulted with Wyrick Robbins together on their estate planning." Regardless, the court expressly limited Wyrick Robbins's compelled

discovery, ordering the law firm to produce only those "documents . . . that are responsive to the [s]ubpoena." Notably, the trial court's order specifically "d[id] not compel the production of information unrelated to estate planning for [Grantor] or attorney-client privileged information of firm clients other than [Grantor]."

Thus, Mary Paula Zaytoun Steele's argument is overruled.

## IV.    Conclusion

For the foregoing reasons, we conclude that the testamentary exception to the attorney-client privilege applies to Grantor's communications with Wyrick Robbins concerning the drafting of the Trust and its amendments. The trial court therefore did not abuse its discretion by compelling Wyrick Robbins to produce documents responsive to the subpoena. In that the court carefully crafted its order to prevent the release of any privileged communications regarding other clients of the law firm, we further conclude that Mary Paula Zaytoun Steele's personal attorney-client privilege will not be violated. Accordingly, we affirm the trial court's order.

AFFIRMED.

Judges FLOOD and STADING concur.